IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Donnie Gibson, #082710, | ) | |
| Petitioner, | ) | C.A. #: 6 04-22489-PMD |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| E. Richard Bazzle, Warden; and | ) | |
| Henry Dargan McMaster, Attorney | ) | |
| General of South Carolina | ) | |
| Respondents. | ) | |
| | ) | |

This matter is before the court upon the Magistrate Judge's recommendation that Respondents' Motion for Summary Judgement be granted on Donnie Gibson's ("Gibson") petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. The record includes a report and recommendation of the United States Magistrate Judge ("the R&R") made in accordance with 28 U.S.C. § 636 (b)(1)(B). A party may object, in writing, to a Magistrate Judge's report within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). The Magistrate Judge's R&R was filed on June 22, 2005. Petitioner Gibson has filed timely objections to the R&R.

## PROCEDURAL BACKGROUND

Gibson and his brother David were convicted of murdering Marvin Bramlett ("Bramlett") in Seneca, South Carolina on July 23, 1976. After the conclusion of the jury trial, the judge sentenced Gibson and his brother to life imprisonment. Gibson did not appeal his conviction or sentence. Instead, Gibson filed an application for post-conviction relief ("PCR") in the state circuit court in 1981. This PCR application was denied on December 18, 1981. The Supreme Court subsequently denied relief on January 24, 1983.

Thereafter, in 1995, Gibson filed what he termed a writ of habeas corpus in circuit court in

1

South Carolina, in which he largely complained that the malice charge given in his murder trial allowed the jury to infer malice (in violation of *Sandstrom v. Montana,* 442 U.S. 510 (1979)), and impermissibly shifted the burden of proof away from the state. This petition was dismissed as successive, and Gibson appealed to the state Supreme Court. The South Carolina Supreme Court remanded the case to the circuit court to consider whether  (1) PCR was unavailable, (2) all other remedies had been exhausted, and (3) the issues Gibson raised in his "habeas" proceeding could have been raised in his prior PCR application. *See Gibson v. State,* 495 S.E. 2d 426 (S.C. 1998). On remand, the circuit court held that Gibson's claims were successive and should be dismissed (and that Gibson was not entitled to relief under the PCR Act or a state court writ of habeas corpus).

Gibson then petitioned the South Carolina Supreme Court for a writ of certiorari. On October 25, 2001, the South Carolina Supreme Court granted certiorari on the question of whether "the lower court erred in summarily dismissing the Petitioner's application for post-conviction relief as successive because his claims were unavailable at his trial or his previous PCR action." (R&R at 8). On August 25, 2003, the state Supreme Court held that Gibson was barred from raising his *Sandstrom* claim in his habeas petition, because that claim had been available in 1979 during the pendency of his first PCR application. *See Gibson v. State,* 586 S.E. 2d 119, 121 (S.C. 2003) ("Since the U.S. Supreme Court decided *Sandstrom* in 1979, Donnie Ray could have raised the issue in 1981, in his first application. Therefore, we find that he should not be able to raise the issue in the present PCR application."). Gibson then instigated the present habeas action on October 6, 2004.[1]

## STANDARD OF REVIEW

---

[1] As discussed *infra*, this date is in question, as Gibson maintains that he delivered his petition to prison officials on September 3, 2004.

### A.    Legal Standard for Summary Judgment

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

### B.    The Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the R&R to which objections are made and the basis for those objections. *Id.* After a *de novo* review of the entire record, including the R&R and Gibosn's objections, the court concludes that the R&R sets forth the relevant facts and applies the correct principles of law. Accordingly, the court adopts the R&R in full and specifically incorporates it into this Order. As the R&R sets forth the relevant factual and procedural background in more detail than discussed above, the court incorporates those sections without a further recitation.

## OBJECTIONS

The Magistrate recommended that Respondents' motion for summary judgment be granted as to all of Gibson's claims. First, the Magistrate concluded that Gibson's claims were barred by

the one year statute of limitations provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Next, the Magistrate concluded that, even assuming Gibson's claims were not time-barred, each claim was procedurally defaulted, and Gibson could not demonstrate cause and prejudice to excuse his procedural default. Gibson specifically objects to each of the Magistrate's conclusions. The court addresses his objections *seriatim*.

### A. Timeliness under the AEDPA

Gibson first objects to the Magistrate Judge's conclusion that his petition is time-barred. Gibson's petition is governed by AEDPA, which enabled prisoners whose convictions were final at the time of AEDPA's enactment to file their habeas corpus petitions within one year. *See, e.g., Brown v. Angelone,* 150 F.3d 370, 375 (4th Cir. 1998) ("[P]risoners whose convictions became final any time prior to the effective date of the AEDPA had until April 23, 1997, to file their . . . § 2255 motion[s]."). Additionally, § 2244(d)(2) provides that AEDPA's one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C.A. § 2244(d)(2). "[U]nder § 2244(d)(2) the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review), is tolled from the limitations period for federal habeas corpus petitioners . . . ." *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999).

Gibson's state conviction became final in 1976, almost 20 years before AEDPA was enacted.[2] As the Magistrate reasoned, however, when AEDPA was enacted in 1996, the petitioner

---

[2] As the Magistrate noted, Gibson was convicted of murder by a jury on July 23, 1976.

4

had a "properly filed" PCR action pending, thus tolling the limitations period. *See* R&R at 11. Gibson's state PCR action concluded when the South Carolina Supreme Court remitted the case to the trial court on September 10, 2003.[3] The Magistrate concluded that the limitations period began on this date and so had run for 391 days when the petitioner's habeas petition was filed on October 6, 2004.

In his Objections, Gibson claims that he delivered the petition to prison officials for mailing on September 3, 2004,[4] a date that would have been within the AEDPA one-year limitations period. As the petition is signed by Gibson on that date, and because there does not appear to be a date stamp from the prison mail room, the court credits Gibson's allegation, and considers the merits of his petition (as the Magistrate did).

### B.    Procedural Default

The Magistrate Judge alternatively concluded that each of Gibson's claims were procedurally defaulted and, therefore, not subject to review in this habeas action. Gibson objects to this conclusion and further argues that he can overcome any procedural default.

---

[3] This conclusion gives Gibson great benefit of the doubt, as it appears that there may have been times during the period after his conviction became final but before the South Carolina Supreme Court issued its remittitur when Gibson did not have an application for collateral review pending. AEDPA's one-year statute of limitations would have begun to run during any of these periods after April 23, 1997. However, given the voluminous record and dearth of many of the pertinent documents, the court simply assumes, as the Magistrate concluded, that Gibson had a properly filed PCR application until September 10, 2003.

[4] In *Houston v. Lack,* 487 U.S. 266, 270 (1988), the United States Supreme Court held that a pro se petitioner's notice of appeal on habeas corpus review is deemed filed on the date that it is turned over to prison officials for transmittal to the court. "Although some courts in other Circuits have been less generous in extending the application of the *Houston* 'mailbox rule,' the Fourth Circuit has consistently applied the 'mailbox rule' to its cases involving *pro se* prisoner litigation." *See also United States v. Dorsey*, 988 F.Supp. 917, 919-20 (D. Md. 1998) (internal citations omitted).

### 1.     Ground One

In Ground One, Gibson claims that the malice instruction[5] from his 1976 trial violated *Sandstrom,* 422 U.S. at 524.[6] While Gibson attempted to present this issue to the South Carolina Supreme Court, that court rejected his claim on the basis of South Carolina's bar against successive habeas petitions.[7] As the Magistrate reasoned, "absent cause and prejudice or a fundamental miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule." *Mackall v. Angelone*, 131 F.3d 442, 445 (4th Cir. 1997); s*ee also Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991). The section of the South Carolina code barring successive petitions, S.C. Code Ann. § 17-27-90,[8] constitutes an adequate and independent state-law ground for decision. *See*

---

[5] Malice was charged in pertinent part as follows :
> I charge you further that malice is presumed from the use of a deadly weapon, and I charge you in that connection, that the burden is on the State to prove malice by evidence, satisfying you beyond a reasonable doubt. This presumption is also a rebuttable one.

(Trial Trans. at 294).

[6] In *Sandstrom,* the United States Supreme Court held that a jury instruction stating that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violated the requirement of the Due Process Clause that the prosecution prove each element of a crime beyond a reasonable doubt. 422 U.S. at 513, 524.

[7] As noted above in the Procedural Background section of this Order, specifically, the South Carolina Supreme Court reasoned:
> Since the U.S. Supreme Court decided *Sandstrom* in 1979, Donnie Ray could have raised the issue in 1981, in his first application. Therefore, we find that he should not be able to raise the issue in the present PCR application.

*Gibson v. State*, 586 S.E.2d 119, 121 (S.C. 2003).

[8] S.C. Code Ann. § 17-27-90 provides:
> All grounds for relief available to an applicant ... must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently

6

*Wilson v. Moore*, 178 F.3d 266, 279 (4th Cir. 1999). Accordingly, as the Magistrate concluded, because the South Carolina Supreme Court refused to consider Gibson's *Sandstrom* claim on the basis that he had failed to present it in his first PCR application, Gibson is barred from raising Ground One in this habeas petition.

To the extent that Gibson contends that the failure to consider this claim will result in a fundamental miscarriage of justice,[9] the court disagrees. Under this narrow exception to the cause requirement, federal habeas courts may consider a federal claim procedurally defaulted in state court "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley,* 541 U.S. 386 (2004), *citing Murray v. Carrier,* 477 U.S. 478 (1986). In order to make this showing, a federal habeas petitioner must

---

waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended application.

[9] Gibson does not appear to argue that cause and prejudice excuse his procedural default, but rather, simply contends that there would be a fundamental miscarriage of justice if this court were to refuse to hear his *Sandstrom* claim. Were Gibson to assert that cause and prejudice excuse his default, his argument would fail, as Gibson presents no evidence sufficient to satisfy this standard. *See, e.g., Washington v. Murray,* 952 F.2d 1472, 1484 (4th Cir. 1991). The Supreme Court has stated that "cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Examples of such external impediments include a factual or legal basis for a claim that was not reasonably available, interference with the defense by government officials, or constitutionally ineffective assistance of counsel. *Id.* Here, as the state Supreme Court concluded, Gibson's *Sandstrom* claim was available to him at the time he filed his first habeas petition in 1981, as *Sandstrom* had been decided two years earlier. *See Gibson,* 586 S.E.2d at 121.

present new "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Moreover, "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.* at 324.

Applying the *Carrier* and *Schlup* standard to the instant case, it is readily apparent that Gibson has not made the proper showing for the simple reason that Gibson fails to present the court with any new evidence of innocence. While Gibson alleges several constitutional errors occurred at his trial and claims that, but for these errors, no jury would have convicted him of murder, he does not provide the court with any new evidence that he did not actually commit the murder of Bramlett.[10] As *Schlup* directs, the court is not to reach the merits of the constitutional claims unless the petitioner first demonstrates new evidence of actual innocence, which Gibson has not done. 513 U.S. at 316. Accordingly, the Magistrate correctly refused to reach the merits of Gibson's first

---

[10] Moreover, after a thorough review of the record, it appears that there was ample evidence to support the jury's murder conviction. On this point, the South Carolina Supreme Court stated
> We do not believe that the accuracy of the Gibson brother's murder conviction was seriously diminished by the charge that allowed the jury to presume malice. The jury heard plenty of testimony that established the malice element. For example, the brothers testified that they killed Bramlett; the defense stipulated that the brother's weapons were used to kill Bramlett; the brothers had a prior history of altercations with Bramlett; knowing that Bramlett was out to cause trouble on the evening of the killing, the brothers armed themselves with loaded weapons and carried them in the back seat of their vehicle; and David testified that he shot Bramlett two times with his .22 Magnum as Bramlett was in a crouch beside Edwards' car. Based on this evidence, we do not believe that the jury's capacity to arrive at a verdict was seriously diminished by the defective malice charge.

*See Gibson,* 586 S.E. 2d at 122.

claim.

### 2. Grounds Two, Three, and Four

Gibson's second claim for relief asserts that "the lower court erred on [the] reasonable doubt charge to the jury"[11] because that charge "clearly shifted the burden of proof to the applicant thus violating Due Process rights." (Petition at 5).[12] In his third and fourth claims, respectively, Gibson claims that his due process rights and equal protection rights were violated because the elements of murder were not established at trial and that the prosecutor engaged in misconduct during the course of the trial. The Magistrate concluded that each of these claims was procedurally defaulted, as Gibson had not presented the claims to the highest state court for review. Gibson now objects on the basis that he raised these claims in a 1999 brief in support of his PCR application. According to Gibson, these three claims were presented to the South Carolina Supreme Court when it granted certiorari on the question of whether the lower court erred in summarily dismissing his application for PCR relief as successive. (Obj. at 6). Gibson argues that "[b]ecause the [s]tate Supreme Court

---

[11] When charging the jury in Gibson's original trial, the trial judge stated the following:
> Now what is reasonable doubt as the law uses that term? You will notice I didn't say beyond every doubt. I said beyond a reasonable doubt. That's a doubt for which you can give a reason. It's a doubt that arises out of the testimony, or lack of testimony.

(Trial Trans. at 291).

[12] Gibson has not made clear whether this claim is distinct from his *Sandstrom* claim or not. In other words, it often appears that Gibson's complaint is that the malice charge impermissibly shifted the burden of proof to him. For example, in a "Supplemental Statement of Disputed Factual Issues" filed by Gibson, he frames the "Issue Presented" as whether "the jury instructions on reasonable doubt and malice were unconstitutional and denied Petitioner due process and equal protection."(Pet. Supp. Statement at 1). While the court believes that all of Gibson's claims are ultimately intertwined, *see, e.g.,* Obj. at 3 (discussing, in the context of his *Sandstrom* claim, the "bedrock principle" that "a burden shifting jury instruction is unconstitutional"), out of an abundance of caution, the court addresses each distinctly enumerated grounds for relief separately.

9

had an opportunity to review these issues, whether ruled upon or not, he fairly presented them to the State's highest court when it ordered the briefing on the issue of successiveness . . . ." (Obj. at 6-7).

As the Magistrate noted, the court cannot identify any point in the state court record demonstrating that Gibson raised these specific claims (to the extent they are distinct from his *Sandstrom* claim) so as to "give the state courts one full opportunity to resolve any constitutional issues by invoking *one complete round* of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added).. Moreover, assuming that Gibson were correct in his Objections that he raised these claims to the Supreme Court in his most recent petition for certiorari, he would be procedurally barred from litigating those claims here because the South Carolina Supreme Court rejected his entire petition on the grounds that it was barred as successive by South Carolina procedural rules. *See Mackall*, 131 F.3d at 445; *Wilson,* 178 F.3d at 279 (holding that S.C. Code Ann. § 17-27-90 constitutes an adequate and independent state-law ground for decision.). Accordingly, as the Magistrate concluded, the court may not consider Grounds Two, Three, or Four.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Respondents' Motion for Summary Judgement is hereby **GRANTED**, and Gibson's § 2254 petition is **DENIED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**August 15, 2005**